IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MQ GAMING, LLC, and CREATIVE KINGDOMS TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-905-MN |
| LEGO SYSTEMS, INC., LEGO BRAND RETAIL, INC., WARNER BROS. HOME ENTERTAINMENT INC., WARNER BROS. INTERACTIVE ENTERTAINMENT INC., and WB GAMES INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO LIMIT THE SCOPE OF THIS SEVENTEEN PATENT CASE**

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

John M. Williamson
Elizabeth D. Ferrill
Ghani Hamadi
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

*Attorneys for Plaintiffs*

Dated:  December 9, 2019

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND..........................................................................................2

III.    ARGUMENT..................................................................................................................3

      A.      Plaintiffs' Three-Stage Narrowing Proposal Is More Efficient and Fairer
           Than Defendants' Bellwether Proposal ...................................................................3

      B.      Plaintiffs' Proposal Aligns with District Practice...................................................4

      C.      Defendants' Proposal Is Unfair and Inefficient ......................................................6

      D.      Defendants Have Not Cited a Single Case Where a Delaware Court Has
           Adopted a Similar Bellwether Plan.........................................................................8

IV.     CONCLUSION.............................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Deere & Company v. Agco Corp et. al.,*
  C.A. No. 18-00827-CFC, D.I. 72 ........................................................................5

*Ethicon LLC v. Intuitive Surgical, Inc.,*
  C.A. No. 17-00871-LPS (January 9, 2018) .........................................................4

*Finjan, Inc. v. Rapid7, Inc.,*
  C.A. No. 18-1519 (D. Del) ...................................................................................4

*Greatbatch Ltd. v. AVX Corp. et al.,*
  C.A. No. 13-00723-LPS (July 28, 2015) .............................................................5

*Intel Corp. v. Broadcom Corp.,*
  173 F. Supp. 2d 201 (D. Del. 2001)......................................................................9

*Intel Corp. v. Future-Link Systems,*
  C.A. No. 14-377-LPS (July 31, 2017) ...............................................................10

*Intuitive Surgical, et al. v. Auris Health, Inc.,*
  C.A. No. 18-01359-MN (April 15, 2019).............................................................4

*In re Katz Interactive Call Processing Patent Litig.,*
  639 F.3d 1303 (Fed Cir. 2011)..............................................................................6

*Landis v. North American Co.,*
  299 U.S. 248 (1936)...............................................................................................7

*LEO Pharma A/S v. Actavis Labs. UT, Inc.,*
  16-00033-JFB (March 29, 2018) ..........................................................................5

*Masimo Corp. v. Philips,*
  C.A. No. 09-08-LPS-MPT (October 4, 2010) ......................................................8

*NexStep, Inc. v. Comcast Cable Comm'ns, LLC,*
  C.A. No. 19-01031-RGA (November 13, 2019) ...................................................4

*Nuance Comm'ns, Inc. v. MModal LLC, et. al.,*
  C.A. No. 17-01484-MN (August 3, 2018)............................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
  C.A. 04-1371-JJF (Sept. 20, 2006) ......................................................................5

*Sonos Inc. v. D&M Holdings Inc.*,
  C.A. No. 1:14-cv-1330-WCB (Oct. 20, 2017)..........................................................................9

*TQ Delta, LLC v. 2Wire, Inc.*,
  C.A. No. 13-cv-1835-RGA (April 10, 2017)............................................................................9

*Unified Messaging Sols. LLC v. Google Inc.*,
  Case No. 6:11-cv-120, 2012 WL 11606516 (E.D. Tex. July 12, 2012) ...................................5

*VLSI Technology LLC v. Intel Corp.*,
  C.A. No. 18-00966-CFC (April 22, 2019)...............................................................................5

## I.      INTRODUCTION

Plaintiffs MQ Gaming, LLC and Creative Kingdoms Technology LLC ("MQ Gaming") first contacted LEGO Systems and Warner Brothers Home Entertainment Inc. in July 2016 to discuss licensing its toys-to-life portfolio, less than a year after LEGO launched its Dimensions gaming franchise.  While the two other major competitors in this space took licenses with little fanfare and without the need for litigation, LEGO refused to negotiate and Warner Brothers never even provided MQ Gaming the courtesy of a response to its letters.  Meanwhile, Plaintiffs' relevant portfolio continued to grow from ten patents to the present seventeen patents.  After more than three years of trying to negotiate, MQ Gaming reluctantly was forced to file this lawsuit.

Now faced with litigation, Defendants ask this Court to ignore their conduct for the last three years and take the drastic step of requiring Plaintiffs to slash their case to less than 25% of its original size only 35 days after receiving Defendants' core technical production.  Defendants argue that their plan to pursue a bellwether trial of four patents will be more efficient and would not prejudice Plaintiffs.  Defendants however, are transparent as to why they really want this drastic reduction—with only four patents left, Defendants plan to file IPR petitions in the hopes of staying the case entirely.  Defendants could have filed IPR petitions as early 2016, but they chose not to.  Defendants' proposal is unnecessarily aggressive and unfair to Plaintiffs, who would be required to select four patents with little information, very early in the case.  Moreover, their proposal merely delays the fate of the other 13 patents, stretching the complete resolution of this case out far beyond the parties' proposed October 2021 trial date.

The Court's conventional approach of multi-stage narrowing, as proposed by Plaintiffs, is in fact the more efficient route.  This orderly, fair process will allow Plaintiffs to take discovery

and make an informed decision about which claims to pursue, culminating in a single trial that resolves all the issues originally pled in the compliant.  Plaintiffs ask the Court to adopt that approach here.

## II.    FACTUAL BACKGROUND

This lawsuit includes 17 patents containing a total of 514 claims, covering many different aspects of the "toys to life" video gaming genre.  The patents cover distinct aspects in this technology space including toys that connect physical and virtual environments, RFID-tagged and wireless toys, customizable toys for games having physical and virtual elements, and methods of interactive play.  As Defendants noted in their Motion, the asserted 17 patents are interrelated, many sharing a common specification, with overlapping claim language.

MQ Gaming has proposed a three-stage narrowing schedule that comports with this Court's practice of requiring each side to narrow its infringement/invalidity case incrementally, as each side gains more information about the case:

(1) narrowing to at most 80 claims in no more than 12 patents with the initial infringement contentions; narrowing to no more than 160 asserted references with no more than 480 prior art arguments total[1] with initial invalidity contentions;

(2) further narrowing to at most 40 claims in no more than 8 patents with the final infringement contentions; narrowing to no more than 80 asserted references with no more than 240 prior art arguments total, 30 days later; and

(3) finally narrowing to at most 20 claims in no more than 6 patents and narrowing to no more than 20 asserted references with no more than 60 prior art arguments, before the Pretrial Conference.

---

[1] The parties agree on how the number of prior art arguments will be calculated as set forth in note 1 of the Proposed Scheduling Order, filed on November 25, 2019.

Plaintiffs' narrowing plan is an "at most" plan, meaning that the parties could decide to assert less than the stated number of claims or references. Because the asserted patents are interrelated, with many of the same terms in the claims, claim construction should be relatively streamlined.

In contrast, Defendants' bellwether proposal requires that Plaintiffs sever and stay 13 patents and be forced to go forward with only four representative patents. Defendants' proposal further dictates that Plaintiffs may select only one patent from each of four "technology groups" unilaterally defined by Defendants. Defendants propose that Plaintiffs make this selection with its Initial Infringement Contentions, when Plaintiffs will have had only 35 days to review the core technical documents and source code (selected and produced by Defendants) and product sales figures.

## III.   ARGUMENT

### A.   Plaintiffs' Three-Stage Narrowing Proposal Is More Efficient and Fairer Than Defendants' Bellwether Proposal

MQ Gaming knows that it will need to narrow its case before trial, but it needs information to make an informed decision about which claims to pursue at trial. Accordingly, MQ Gaming proposes a three-stage narrowing schedule of asserted claims and references, as outlined above, culminating in a single trial.

Unlike Defendants' bellwether proposal—which severs and stays 13 patents—Plaintiffs' proposal does not delay resolution of more than three-quarters of the case until years following the conclusion of an initial trial. Rather than delay resolution of the stayed claims, the better course is to allow the case to narrow as the parties become more familiar with the issues, which is fair to both sides. Plaintiffs' proposal encourages this narrowing of the case with specific deadlines and limitations, all while proceeding towards a final resolution of the case in a single trial.

In criticizing the three-stage narrowing plan, Defendants have offered unsupported estimates of the claim construction disputes that would need the Court's attention, without pointing to specific terms that they contend need construction.  *See* Motion at 1 (estimating that there will likely be "well over 80 claim construction disputes").  Defendants also emphasize the Court's preference to construe a limited number of claim terms.  Motion at 12 (citing *Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519 (D. Del), Transcript of July 31, 2019 Teleconference (limiting the number of terms for construction)).  Plaintiffs agree that the parties should work together to limit the number of claim terms to be presented to the Court during claim construction.  But, at this stage, Plaintiffs have not selected their 80 claims and so Defendants have no way of accurately estimating how many claim construction disputes may really need to be presented to the Court.  Moreover, given the shared specifications and overlapping content across the patents and claims, Defendants' prediction about the number of unique claim terms in dispute is dubious.  Regardless, selection of claim terms is an issue for another day when both sides have more information about the case.

**B.      Plaintiffs' Proposal Aligns with District Practice**

Plaintiffs' proposed schedule is in line with this District's practice of adopting a multi-phase narrowing procedure.  *See e.g., Intuitive Surgical, et al. v. Auris Health, Inc.,* C.A. No. 18-01359-MN, memorandum order (April 15, 2019) (adopting a three-stage narrowing plan at initial contentions, before claim construction, and with final contentions); *Nuance Comm'ns, Inc. v. MModal LLC, et. al.*, C.A. No. 17-01484-MN, memorandum order (August 3, 2018) (adopting a three-stage plan narrowing at initial contentions, during claim construction, and with final contentions); *NexStep, Inc. v. Comcast Cable Comm'ns, LLC*, C.A. No. 19-01031-RGA, oral order (November 13, 2019) (adopting a three-stage narrowing with initial contentions, after claim construction hearing, and before the pretrial order); *VLSI Technology LLC v. Intel Corp.,*

C.A. No. 18-00966-CFC, memorandum order (April 22, 2019) (ordering two-stage narrowing before claim construction briefing and then after claim construction order); *Deere & Company v. Agco Corp et. al.,* C.A. No. 18-00827-CFC, D.I. 72, March 20, 2019, *Ex. A, Scheduling Order* (ordering three-stage narrowing at initial contentions, before claim construction briefing and after claim construction order); *LEO Pharma A/S v. Actavis Labs. UT, Inc.*, 16-00033-JFB, memorandum order (March 29, 2018) (adopting a two-phase procedure, with the first phase shortly after the court's order and a second after the close of expert discovery); *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-00871-LPS, memorandum order (January 9, 2018) (adopting a three-phase schedule at initial contentions, before claim construction, and with final contentions).  Where this District has adopted a one-phase narrowing, it occurred much further along in the case where the parties had already completed discovery.  *See Greatbatch Ltd. v. AVX Corp. et al.*, C.A. No. 13-00723-LPS, memorandum order (July 28, 2015) (required narrowing one month before dispositive motions); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. 04-1371-JJF, memorandum order (Sept. 20, 2006) (requiring a reduction down to seven claims at the Motions in Limine phase, after the case had naturally been reduced to 23 claims earlier in the litigation).

While Defendants cite language from courts about the merits of narrowing a case, *see* Motion at 7-8, even in the context of the cases cited by Defendants, the narrowing of claims was scheduled to occur much further along in the case than in Defendants' proposal.  *See Unified Messaging Sols. LLC v. Google Inc.*, Case No. 6:11-cv-120, 2012 WL 11606516 (E.D. Tex. July 12, 2012) (adopting a two-phase narrowing procedure, limiting claims first before claim construction (more than a year after the case was filed), and second, after the claim construction order); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed Cir. 2011)

(ordering a two-phase narrowing of the case, with the second phase occurring after discovery, but allowing additional claims if those claims were not duplicative of previously selected claims).

As illustrated above, this well-established narrowing practice, widely utilized in this District, allows the plaintiff to review the appropriate technical information about the accused products, the prior art landscape, and the Court's claim construction before selecting claims to pursue at trial, thus preserving the plaintiff's due process and Seventh Amendment rights.

**C.    Defendants' Proposal Is Unfair and Inefficient**

While MQ Gaming fully intends to narrow its case before trial, requiring MQ Gaming to reduce its case to less than a quarter of its original size with the initial infringement contentions is not appropriate.  Plaintiffs agree that there are hundreds of claims asserted in the Complaint that will never be tried, *Motion* at 2, but the issue is that Plaintiffs have not yet taken any discovery, nor have they had the benefit of expert analysis of Defendants' source code and other documentation.  Defendants' proposal does not allow Plaintiff enough time or enough information to make an informed decision about which claims should be maintained.

Defendants also ask the Court to order Plaintiffs to proceed with one patent from each of the four "technology groups" devised by Defendants.  But, at the moment, the information imbalance in the case is staggering.  For example, Defendants have decided that "a critical issue" for its "Lighting Effect" group is whether the Dimensions product operates in a certain way. Motion at 11.  Defendants' ability to home in on this issue illustrates one of the major problems with Defendants' plan.  At this stage, Plaintiffs have no way of knowing if this is a "critical" issue, because only Defendants know every detail about how their products operate. If the Court adopted Defendants' bellwether plan, Plaintiffs would be making this selection in the dark, based on limited information about the Dimensions product.  Similarly, Defendants have detailed sales

and marketing information and are privy to their planned invalidity arguments.  Again, Plaintiffs

would need to select the four patents without this information.  Finally, Plaintiffs would not have

the opportunity to depose Defendants' witnesses, request follow-up technical information, or

review other damages information when making its selection.  In contrast, Plaintiffs' proposal

reduces the information imbalance before the parties must narrow their positions.

While Defendants tout the Court's inherent authority to manage its docket—a principle

that Plaintiffs do not dispute—Defendants ask the Court to wield this power here solely to

Defendants' advantage.  Motion at 8.  While economy of time and effort for courts and the

litigants is important, the Supreme Court has cautioned, in the very case cited by Defendants,

that this exercise of judgment must "weigh competing interests and maintain an even balance"

between the parties.  *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).  Defendants'

proposal goes against this principle and is designed to benefit Defendants and their plan to file

IPR petitions on the four patents selected by Plaintiffs.  Defendants seek to obscure their

advantage by arguing that Plaintiffs "are not giving up any rights at all" and characterizing

multiple trials and appeals (which may be necessary under their proposal) as only a "slight

delay[.]" Motion at 14.  Plaintiffs disagree.  The right to timely resolution of these issues and the

opportunity to make an informed decision about which claims to pursue should not be so easily

dismissed.

Defendants offer that their bellwether approach is "likely" to resolve the parties' dispute.

Motion at 2.  In truth, severing and staying 13 patents does not promote efficiency.  Rather, it

just leaves resolution of those claims for another day.  And at that future time, presumably the

parties would need to go through many of the same steps (e.g., infringement contentions,

invalidity contentions, claim construction, expert reports, etc.) to resolve those claims, requiring additional resources.

Finally, Defendants argue that their proposal will avoid expending "substantial resources" on discovery and claim construction on patents that may never be tried. Motion at 15. But this is the very nature of the discovery process, as each party comes to understand their positions better, the issues between the parties are narrowed and focused in preparation for trial. This is not a time-consuming detour, but rather a deliberative procedure that is designed to resolve the issues between the parties in an efficient manner while respecting the due process rights of both sides.

### D. Defendants Have Not Cited a Single Case Where a Delaware Court Has Adopted a Similar Bellwether Plan

None of the cases relied on by the Defendants require such a massive reduction at this early stage, when plaintiffs have such little information about a case. This is likely because such a drastic narrowing is both unfair and inefficient.

Defendants point to *Masimo Corp. v. Philips*. Motion at 8. But, *Masimo* involved two stages of narrowing, one step five months into discovery (after document production was complete) and a second step with claim construction briefing. C.A. No. 09-08-LPS-MPT, memorandum order (October 4, 2010). Neither party (which were both asserting patents) were required to select at the early stage advocated by Defendants here.

Defendants also mischaracterize *Sonos Inc. v. D&M Holdings, Inc.* as using a "bellwether approach." Motion at 9. Originally, the case involved as many as 12 patents, which *naturally* narrowed to 8 patents before trial. *Sonos Inc. v. D&M Holdings Inc.*, C.A. No. 1:14-cv-1330-WCB letter from D&M (Oct. 3, 2017), memorandum order (Oct. 20, 2017). It was only at that point, with a trial less than two months away, that the court ordered the plaintiff to narrow the

case to three patents.  In *Sonos*, the plaintiff had the benefit of fact and expert discovery, claim construction, and invalidity contentions before it was required to limit its case as Defendants propose here.  This is not a "bellwether" case as Defendants have proposed.

Defendants point to two cases in which the court organized patents into groups for trial, but neither of these cases involved a "bellwether" case.  In *Intel Corp. v. Broadcom Corp.*, Motion at 9, the court notes that the Intel's complaint included five patents and that the court has required the *trial* to proceed in two parts.  173 F. Supp. 2d 201, 205 (D. Del. 2001). There is no indication that the court required selection of a subset of these patents or that the court severed or stayed the remaining patents.  Indeed, in the order cited by Defendants, Motion at 9, just before trial, the court ruled on a partial summary judgment as to one patent from the first trial and one patent from the later trial.  *Id.* at 217.  Thus, *Intel* appears to only stand for the proposition that the court divided patents for *trial*, but not pre-trial, and did not require a selection of claims with the plaintiff's initial infringement contentions, as Defendants request here.  Likewise, in *TQ Delta, LLC v. 2Wire, Inc.*, the court divided the case into multiple "families" and set a schedule with different trial dates for each family, but there is no indication that the court adopted an approach like the one proposed by Defendants. C.A. No. 13-cv-1835-RGA, memorandum order (April 10, 2017).

Finally, Defendants cite a single case in which Judge Stark decided to proceed with a "bellwether" trial of three patents, but under much different circumstances. *Intel Corp. v. Future-Link Systems,* C.A. No. 14-377-LPS, memorandum order (July 31, 2017). The case originally involved 17 patents and was naturally narrowed to no more than 14 patents by two months before trial.  At that point, Judge Stark required the case to be narrowed to three patents, and then gave the plaintiff until one month before trial to select its 10 claims.  The remaining patents were

stayed.  As with all the other cases discussed herein, the plaintiff had the benefit of full

discovery, claim construction, and invalidity contentions prior to making its selection.

In sum, Defendants have not cited a single case where a court required such a major

reduction in patents so early in a case.

## IV.    CONCLUSION

Defendants ask this Court to deviate from the practice of incremental narrowing of each

parties' case and hand Defendants a procedural and tactical advantage.  Having ignored

Plaintiffs' efforts to resolve this dispute in a cost-effective way when first presented with

Plaintiffs' licensing offer more than three years ago, Defendants want the Court to now aid them

in avoiding responsibility to defend themselves.  Plaintiffs respectfully request enough time in

the schedule to obtain and review discovery, consult with experts, consider invalidity

contentions, and account for the Court's claim construction order, in order to make an informed

decision on narrowing this case.

ASHBY & GEDDES

/s/ Andrew C. Mayo
_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Of Counsel:                                                                     Attorneys for Plaintiffs

John M. Williamson
Elizabeth D. Ferrill
Ghani Hamadi
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Dated:  December 9, 2019