13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MQ GAMING, LLC, and CREATIVE   )
KINGDOMS TECHNOLOGIES, LLC,    )
                               )
         Plaintiffs,           )
                               ) C.A. No. 19-905-MN
v.                             )
                               )
LEGO SYSTEMS, INC., LEGO BRAND )
RETAIL, INC., WARNER BROS. HOME)
ENTERTAINMENT, INC., WARNER    )
BROS. INTERACTIVE ENTERTAINMENT)
INC., and WB GAMES, INC.,      )
                               )
         Defendants.           )

            Monday, January 13, 2020
            2:00 p.m.
            Scheduling Conference


            844 King Street
            Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge




APPEARANCES:


         ASHBY & GEDDES
         BY:  STEVEN J. BALICK, ESQ.

         -and-

         FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
         BY:  ELIZABETH D. FERRILL, ESQ.
         BY:  JOHN WILLIAMSON, ESQ.

                  Counsel for the Plaintiffs

```
 1   APPEARANCES CONTINUED:

 2

 3
         DUANE MORRIS LLP
 4       BY:  RICHARD L. RENCK, ESQ.
         BY:  ALISON HADDOCK HUTTON, ESQ.
 5       BY:  ANTHONY J. FITZPATRICK, ESQ.
         BY:  DANIEL TARR, ESQ.
 6

 7              Counsel for the Defendants

 8

 9                    - oOo -

10             P R O C E E D I N G S

11       (REPORTER'S NOTE:  The following hearing was held in

12   open court, beginning at 2:00 p.m.)

13

14

15              THE COURT:  Good afternoon.  Please be seated.

16   Let's start with some introductions.

17              Mr. Balick.

18              MR. BALICK:  Good afternoon, Your Honor.

19              THE COURT:  Good afternoon.

20              MR. BALICK:  Steven Balick from Ashby & Geddes

21   here on behalf of the plaintiffs.  I'm join by co-counsel

22   from the Finnegan Henderson firm, John Williamson and

23   Elizabeth Ferrill.

24              MS. FERRILL:  Good afternoon.

25              THE COURT:  Good afternoon.
```

Timestamps: 13:44:24, 13:58:06, 13:59:40, 13:59:42, 13:59:44, 13:59:46, 13:59:47, 13:59:50, 13:59:52, 13:59:57, 13:59:59, 13:59:59

```
14:00:03  1                    MR. BALICK:  Thank you.
14:00:05  2                    THE COURT:  Mr. Renck.
14:00:07  3                    MR. RENCK:  Good afternoon, Your Honor.  Richard
14:00:09  4   Renck from Duane Morris from Wilmington.  I also have my
14:00:12  5   colleagues from Duane Morris, Alison Hutton, Tony
14:00:16  6   Fitzpatrick and Daniel Tarr.
14:00:18  7                    THE COURT:  Good afternoon.
14:00:19  8                    So welcome to everyone.  Thanks for coming in.
14:00:23  9   I don't usually do scheduling conferences in person, but
14:00:26 10   given the issues that were raised and the defendants' motion
14:00:34 11   to limit the scope of the trial, I thought it would be
14:00:37 12   helpful.  So it seems like we should be able to come up with
14:00:43 13   a way to limit the scope of this case for trial.  And I
14:00:51 14   guess the question I have is when that limitation should be
14:00:54 15   accomplished.
14:00:55 16                    One question I did have based on some issues in
14:00:58 17   the motion is have any IPR petitions for IPR been filed?
14:01:03 18                    MS. HUTTON:  To date, no, Your Honor.
14:01:06 19                    THE COURT:  Okay.  So I guess it's -- I'm not
14:01:11 20   sure I care, I'll hear from plaintiffs first or defendants
14:01:14 21   first, whoever wants to rush up to the podium.
14:01:18 22                    MS. HUTTON:  I'll rush up, Your Honor, if that's
14:01:20 23   okay.  Alison Hutton for defendants.
14:01:22 24                    Your Honor, this case as pled by plaintiffs
14:01:26 25   involving seventeen patents is simply unmanageable on its
```

```
14:01:31  1   face and intended to force defendants to the settlement
14:01:34  2   table.  The parties agree that a case narrowing is
14:01:39  3   necessary, but obviously disagree as to how to do it.
14:01:41  4             THE COURT:  Well, seventeen isn't going to go
14:01:45  5   very far because under their proposal it gets down to twelve
14:01:48  6   within the next month.  Right?
14:01:50  7             MS. HUTTON:  Yes, Your Honor.  And we would
14:01:51  8   propose that that still frankly is just completely
14:01:55  9   unworkable.
14:01:57 10             THE COURT:  Are these patents related to each
14:01:58 11   other?
14:01:59 12             MS. HUTTON:  They are, Your Honor.  They are as
14:02:00 13   shown in page -- at page 4 of our opening brief, there are
14:02:04 14   generally two families, and it's a little bit confusing but
14:02:08 15   there are five common specifications across all seventeen
14:02:11 16   patents, that's probably easiest to see in Exhibit A to our
14:02:15 17   opening brief.
14:02:16 18             So there is a fair amount of overlap between the
14:02:20 19   patents in general which is why we were able to group them
14:02:25 20   into four what we call technology groups.  So there are the
14:02:29 21   five common specification and the four groups are coming at,
14:02:32 22   we arrived at basically by looking at plaintiffs'
14:02:36 23   allegations in the complaint, seeing where there were
14:02:39 24   commonalities and what was being accused --
14:02:42 25             THE COURT:  How does it help -- how does it
```

14:02:44   1    necessarily help to limit let's say fact discovery, let's
14:02:49   2    take them in steps, fact discovery with your proposal given
14:02:53   3    that they can choose any four that they want and they can
14:02:57   4    choose one from each family, how does that really limit
14:02:59   5    anything in fact discovery?
14:03:02   6            MS. HUTTON:  I think fact discovery is where
14:03:03   7    we're not going to see a huge change in terms of the
14:03:07   8    documents, the source code they're going to get, the scope
14:03:10   9    of financial and marketing information they might want
14:03:12  10    because the same LEGO Dimensions products are accused,
14:03:16  11    that's not going to expand very much regardless of how many
14:03:20  12    patents and claims are at issue in the case.  What's really
14:03:22  13    going to change, and we try to emphasize this for Your Honor
14:03:26  14    is the scope of claim construction and the amount of work
14:03:28  15    that defendants in particular will have to do in invalidity
14:03:32  16    contentions and how much work the experts would have to do
14:03:35  17    under plaintiffs' proposal, we have got a second narrowing
14:03:39  18    to forty claims out of six patents.  That's an extremely
14:03:42  19    large number of claims for both sides experts to have to
14:03:46  20    address at the expert discovery stage.
14:03:50  21            THE COURT:  So let me ask the question that
14:03:52  22    plaintiffs raised in the papers which is if I limit this to
14:03:57  23    four patents, you all haven't filed any IPR petitions yet
14:04:02  24    but let's say you do on those four patents, then you're
14:04:05  25    going to ask me to stay the whole case or are we going to go

14:04:08  1    back under your proposal and try other patents?
14:04:12  2              MS. HUTTON:  Under our proposal we would stay
14:04:14  3    the whole case because as we pointed out in the briefing,
14:04:18  4    there are these five common specifications, the claims are
14:04:21  5    similar, we believe this is an extremely high likelihood
14:04:24  6    that art that we find will either be informative of the
14:04:27  7    validity of the patents sort of groups as a whole or as to
14:04:32  8    maybe all of the patents in this whole seventeen set of
14:04:35  9    somewhat related patents.  So it wouldn't make sense in our
14:04:40 10    view to stay the four patent bellwether case and proceed on
14:04:44 11    the thirteen remaining stayed patents if we filed IPR's that
14:04:48 12    were instituted.
14:04:49 13              THE COURT:  Okay.  Anything else?
14:04:52 14              MS. HUTTON:  You know, I think just the bottom
14:04:54 15    line is if something more dramatic than what plaintiffs had
14:04:58 16    proposed is necessary here, this is the ideal case for the
14:05:02 17    kind of bellwether procedure we proposed in our view and I
14:05:06 18    don't believe the plaintiffs have really disputed that.
14:05:09 19    This is the kind of case if there is enough overlap that if
14:05:12 20    we proceed on these four patents, then the separate
14:05:16 21    remaining patents means that the plaintiffs are not giving
14:05:19 22    up any rights with respect to those patents which they sat
14:05:23 23    on and not pursued for many years, we can really get the
14:05:26 24    parties and the Court some guidance about the merits of
14:05:29 25    their claim without the unnecessary expenditure of time,

14:05:32 1 multiple claim construction hearings, possibly, you know,
14:05:37 2 hours upon hours upon hours of time spent in preparing
14:05:41 3 invalidity contentions for patents that plaintiffs
14:05:43 4 ultimately may never pursue.
14:05:45 5  THE COURT: Okay.
14:05:46 6  MS. HUTTON: So unless Your Honor has any
14:05:48 7 further questions.
14:05:48 8  THE COURT: No. Thank you. That was helpful.
14:05:51 9  MS. FERRILL: Good afternoon, Your Honor.
14:05:55 10  Frankly plaintiffs see this case a bit
14:05:57 11 differently than defendants do. We had looked at as many as
14:06:03 12 forty-three patents before we came down to the seventeen
14:06:05 13 that we included in the complaint. And what we looked at
14:06:08 14 was we could file what one might consider waves of cases
14:06:14 15 with say four or five patents apiece in order to get all of
14:06:17 16 the patents heard, but it seemed because the patents are so
14:06:19 17 closely related and because they really deal with just one
14:06:22 18 small set of products that it would make sense to file a
14:06:25 19 single case. When we filed a single case we expected to get
14:06:30 20 one trial, and that's what we would still like. Our plan
14:06:33 21 is, and our proposal is to narrow the claims in such a way
14:06:37 22 that you won't have to see the --
14:06:40 23  THE COURT: No, but the problem is under your
14:06:41 24 proposal you want me to do claim construction proceedings on
14:06:45 25 twelve patents, six of which under your proposal it's a

14:06:49  1   complete waste of my time to do because you're not going to
14:06:51  2   plan to try those.  And similarly for your case dispositive
14:06:55  3   motions, you want me to deal with case dispositive motions
14:06:58  4   on eight patents when clearly two of them you're not going
14:07:01  5   to try because you say you're going to limit it to six.  So
14:07:04  6   why should I do that?
14:07:07  7               MS. FERRILL:  Your Honor, to the extent that you
14:07:08  8   want to limit the claim construction to a certain number of
14:07:11  9   terms, we have no problem with that.  We think that the
14:07:13 10   terms themselves are very closely related.  For example,
14:07:18 11   footnote 5 of the plaintiffs' reply brief compares things
14:07:22 12   like collectable figurine toy action figure, we don't think
14:07:27 13   that most of these claim terms are going to necessarily need
14:07:31 14   construction.  But to the extent that they do, you know,
14:07:34 15   we're aware that Your Honor has a limited number, or a
14:07:37 16   limited amount of time and a limited number of terms that
14:07:39 17   you would like to construe.  And we're fine with doing that.
14:07:42 18   And to the extent that we end up with terms that the parties
14:07:47 19   still can't agree on much later down the road, we could
14:07:50 20   present those to you.  But we think that because of how
14:07:53 21   closely related these patents are and how closely related
14:07:56 22   the claim language is that the claim construction won't be
14:08:00 23   the unwieldy task that defendants have proposed.
14:08:02 24               THE COURT:  What about case dispositive motions?
14:08:05 25   Why should I deal with two patents on case dispositive

1  motions that are not going to be tried?
2           MS. FERRILL:  Your Honor, to the extent that
3  that's a problem, we would be willing to move the date to
4  before case dispositive motions to come down to the six
5  patents.
6           THE COURT:  Okay.  Thank you.
7           Ms. Hutton, any response?
8           MS. HUTTON:  Yes, Your Honor, if you don't mind.
9  Sitting here today we're a little unclear as to why
10 plaintiffs need to assert the number of patents that they
11 seem to believe they're entitled to.  We hear that they have
12 forty-three patents.  To our understanding that's the entire
13 family of all the patents that the plaintiffs have received,
14 that includes many patents that can never read on the LEGO
15 Dimensions products in our view.  It's important to note
16 there are seven patent applications outstanding that are
17 currently pending, five of which are continuations or
18 continuations of continuations of the patents currently in
19 this suit.  In our view this case could expand rather than
20 narrow as the case goes on.
21           As it relates to claim construction, of course
22 plaintiffs are typically in the position of feeling like
23 there are fewer claim construction disputes than defendants
24 do, and from our perspective as pointed out in our reply
25 brief at page 7, while some of the terms that we think would

14:09:27  1    be at issue in the case may seem on their face pretty easily
14:09:32  2    comprehensible and ones that may not necessarily need
14:09:34  3    construction, each of these terms has a number of elements
14:09:38  4    that the claims expressly recite have to be included in
14:09:41  5    those figurines or toys or items.
14:09:44  6             All of those issues are going to be ones the
14:09:46  7    parties are going to be fighting about because plaintiffs
14:09:48  8    are reading those terms all on the LEGO Dimensions
14:09:52  9    figurines, so clearly there is going to be disputes, they're
14:09:55 10    going to have to be resolved and one claim construction
14:09:58 11    hearing or later in the case.
14:10:00 12             As it relates to dispositive motions, it's very
14:10:03 13    prejudicial for defendants to have to litigate, try to
14:10:09 14    discern out of twelve or eight patents how many patents or
14:10:12 15    how many claims plaintiffs are actually going to proceed
14:10:16 16    with in the case and to have to find that out even before
14:10:19 17    dispositive motion practice.
14:10:20 18             For all those reasons we think our bellwether
14:10:23 19    proposal is going to be more efficient for the parties and
14:10:26 20    the Court.
14:10:26 21             THE COURT:  Okay.  So this is a tough one
14:10:35 22    because I can see the merits of each side's arguments, but
14:10:40 23    what I want to do is I want to take it -- I want to take a
14:10:42 24    slightly different approach.  I do appreciate the bellwether
14:10:45 25    and we may actually get to a trial on the bellwether issues.

But I am not going to -- I'm going to go with the timing of plaintiffs' proposal. I think there is some, it might be a typo or two in the chart that was given to me because there is discovery, fact discovery completion is the 21st of November -- November 15th, 2021, which is after the proposed trial date, so I'm guessing that's supposed to be 2020. But anyway, I'm going to go with the plaintiffs' proposed schedule.

After the claim construction chart is filed, I want to have a call with the parties to discuss whether there are issues with the number of terms and how we're going to simplify things. If it turns out that I need to, you know, revisit the bellwether trial at that point, I will. If I need to limit the number of terms at that point, I will. But I'm going to ask that you guys go back and redo the scheduling order. And plaintiffs, I would like you to put in a time for a status call with us after the time for filing the joint claim construction chart.

Then I think that after the deadline for completion of fact discovery, we should have another status call. And at that point, we're going to discuss what patents will be tried because I don't think the defendants should have to go through expert discovery on a bunch of patents that aren't going to be tried, or else maybe we'll do a bellwether trial on certain of those. But by then we

14:12:48  1   should know, presumably I guess the way I counted is the
14:12:52  2   timing from the filing of this lawsuit from the timing that
14:12:58  3   you might hear from the PTAB if IPR petitions are filed we
14:13:04  4   should probably have some information about what patents we
14:13:07  5   may or may not need to go forward on.
14:13:09  6              So we'll have a discussion after the completion
14:13:12  7   of fact discovery as to what patents we're going to go
14:13:16  8   forward on, whether we should have a bellwether trial on
14:13:19  9   certain patents at that point.  And at this point, I am not
14:13:23 10   going to allow case dispositive motions because I think they
14:13:27 11   would just be unwieldy, but after the completion of expert
14:13:33 12   discovery I will allow a status conference call then to
14:13:39 13   discuss potential motions for summary judgment.
14:13:43 14              So you're going to need to ask -- put in a time
14:13:52 15   and ask that we put something in between March 20th, 2021,
14:13:57 16   and April 24th, 2021, so that we can keep on this schedule.
14:14:02 17              With respect to a trial date, we'll give you a
14:14:08 18   trial probably we can get something in the October 2021 time
14:14:13 19   period.  And we'll do that after we get the proposal, we'll
14:14:21 20   fill that in.
14:14:26 21              Are there any other disputes that I need to deal
14:14:31 22   with?
14:14:33 23              MR. FITZPATRICK:  Can we just have a moment,
14:14:36 24   Your Honor?
14:14:39 25              THE COURT:  So that they don't have to listen

```
14:14:40  1    while you're talking, just give them a second.
14:14:47  2             MS. HUTTON:  Your Honor, if I may.  Just to be
14:14:52  3    sure I'm clear, so you said you're adopting plaintiffs'
14:14:56  4    scheduling proposal.  Does that include the number of claims
14:15:00  5    and patents because it is our view that that is not
14:15:03  6    consistent with prior cases from this Court that typically
14:15:07  7    reduce plaintiffs down to about thirty or forty claims
14:15:10  8    initially.
14:15:11  9             THE COURT:  It is.  I am adopting everything
14:15:14 10    that they have in there.
14:15:16 11             MS. HUTTON:  All right.  Thank you, Your Honor.
14:15:18 12             THE COURT:  For now.  And then we will address
14:15:21 13    those issues at the status conferences after the filing of
14:15:27 14    the joint claim construction chart, or after the completion
14:15:30 15    of fact discovery.
14:15:35 16             MS. FERRILL:  Your Honor, point of
14:15:39 17    clarification.  On page 16 of the proposed scheduling
14:15:41 18    conference we did have a dispute about page limits for the
14:15:44 19    Daubert motion.
14:15:45 20             THE COURT:  You get my standard number.
14:15:47 21             MS. FERRILL:  And Your Honor, the same is true
14:15:49 22    for proposed trial motions on page 19?
14:15:52 23             THE COURT:  I'm sorry, where am I looking?
14:15:54 24             MS. FERRILL:  Your Honor, on page 19 of this
14:16:02 25    scheduling order.  Paragraph 20.
```

| | |
|---|---|
| 14:16:06 1 | THE COURT: Yes. But that one seems silly to |
| 14:16:10 2 | deal with at this point. You can just put in there that |
| 14:16:13 3 | we'll address that issue as appropriate after trial. |
| 14:16:17 4 | MS. FERRILL: Thank you. |
| 14:16:19 5 | THE COURT: And then I would -- I do want you to |
| 14:16:22 6 | put in there since it's Daubert, it's page limits with |
| 14:16:27 7 | Daubert motions since I have taken away case dispositive |
| 14:16:32 8 | motions as of this time, you're just going to need to go |
| 14:16:36 9 | with Daubert. I don't know that we need to have the |
| 14:16:38 10 | combined -- actually you can leave the combined ones in |
| 14:16:42 11 | there and say to the extent the Court later allows case |
| 14:16:46 12 | dispositive motions because I may allow them. It's just I'm |
| 14:16:50 13 | not allowing them currently as we're talking about it may |
| 14:16:54 14 | include patents that will not ultimately be tried. |
| 14:16:58 15 | Okay. Any other disputes? |
| 14:17:09 16 | MS. HUTTON: No, Your Honor. |
| 14:17:10 17 | THE COURT: Okay. Thanks to everyone for coming |
| 14:17:14 18 | in. I appreciate it. We are adjourned. |
| 19 | (Court adjourned at 2:17 p.m.) |
| 20 | |
| 21 | I hereby certify the foregoing is a true and |
| | accurate transcript from my stenographic notes in the proceeding. |
| 22 | |
| 23 | /s/ Dale C. Hawkins |
| | Official Court Reporter |
| 24 | U.S. District Court |
| 25 | |