## ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

June 9, 2020

The Honorable Maryellen Noreika          **VIA ELECTRONIC FILING**
United States District Court
844 N. King Street
Wilmington, DE 19801-3556

Re:   *MQ Gaming, LLC, et al. v. Lego Systems, Inc., et al.,*
      C.A. No. 19-905-MN

Dear Judge Noreika:

    I write on behalf of the parties following the Court's directive on May 11 that the parties work together to further narrow asserted claims and prior art references. The parties have agreed, subject to the Court's approval, to adjust dates related to expert discovery, and a status call date related to case disposition motions, as follows:

- **Expert Reports:** For the party who has the initial burden of proof on the subject matter, the initial Federal Rule of Civil Procedure 26(a)(2) disclosure of expert testimony is due on or before **January 19, 2021**. The supplemental disclosure to contradict or rebut evidence rebut evidence on the same matter identified by another party is due on or before **February 19, 2021**. Reply expert reports from the party with the initial burden of proof are due on or before **March 9, 2021**. No other expert reports will be permitted without either the consent of all parties or leave of the Court. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. All expert discovery in this case shall be initiated so that it will be completed on or before **April 14, 2021**.
- On or about **April 20, 2021**, Court will hold a status teleconference to discuss whether any case dispositive motions will be permitted (currently scheduled for April 13, 2021 at 10 am).

The parties were unable to agree on a schedule to reduce asserted claims and prior art references. Each side's positions and proposals are set forth below for the Court's consideration.

**Plaintiff's Position:**

    In December 2019, the parties fully briefed the issue of case narrowing in connection with the Defendants' Motion to Limit the Scope of this 17 Patent Case (D.I. 25-27). Defendants' proposed a sever-and-stay bellweather plan, which would have greatly prolonged the case by staying adjudication of most of the asserted patents, while Plaintiffs suggested a staged narrowing

approach to efficiently deal with the entire case. On January 13, 2020, the Court conducted a hearing on this issue and entered the current Scheduling Order (D.I. 33) ("Scheduling Order"). In the Scheduling Order, the Court ordered a staged plan by which the case is narrowed in phases in preparation for trial. In accordance with the Scheduling Order, on February 19, Plaintiffs narrowed their case down to 80 claims and 12 patents, and, on March 18, Defendants narrowed their case to 480 arguments over 160 references. During the status call on May 11, Defendants asked for additional narrowing and the Court ordered Plaintiffs to further reduce its case down to 50 asserted claims prior to claim construction briefing. On May 15, 2020, Plaintiffs reduced its case to 50 asserted claims over 11 patents.

In sum, Plaintiffs have narrowed their case in terms of both patents (down to 11 from 17) and asserted claims (down to 50 from 514) and propose eventual narrowing to no more than 15 claims over 6 patents (over no more than four distinct specifications). Defendants have not yet been required to further narrow from their initial invalidity contentions. In addition to the case narrowing completed, Plaintiffs propose the following for further case narrowing:

- By **July 1, 2020**, Defendants shall narrow to no more than 160 asserted references and 300 invalidity prior art arguments.
- By **Close of Fact Discovery** (November 15, 2019), Plaintiffs shall provide final infringement contentions to include no more than 8 patents and 40 claims.
- By **January 6, 2020** (the same date as the Status Call with the Court), Defendants shall provide final invalidity contentions to include no more than 80 references and 240 prior art arguments.
- By **April 14, 2021,** Plaintiffs shall narrow to no more than 6 patents and 20 claims.
- By **April 27, 2021,** Defendants shall narrow to no more than 20 asserted references and 60 invalidity prior art arguments.
- **Two weeks before the pretrial conference**, Plaintiffs shall narrow to no more than 6 patents and 15 claims and Defendants shall narrow to no more than 15 asserted references and 45 invalidity prior art arguments.

Plaintiff's proposal largely keeps the three-stage narrowing plan of the Scheduling Order in place, and adds two additional stages of mutual narrowing. Plaintiffs propose narrowing by both parties as each party has additional information: 1) before claim construction and following the Court's claim construction order/close of fact discovery; 2) at the conclusion of expert discovery; and 3) after summary judgment, if authorized, in preparation for trial. Plaintiffs have already completed their additional pre-claim construction narrowing.

Not satisfied with the results of either of its first two attempts, Defendants take a third crack at trying to narrow the number of asserted patents to facilitate IPR filings.[1] Defendants' proposal would require Plaintiffs to unilaterally make a further reduction on July 1 *without* Defendants making any change to their invalidity positions. Defendants, however, have known about at least some of the patents-in-suit since July 2016, and thus have had ample time to make IPR filing

---

[1] During a meet and confer on June 4, Defendants made clear that they want additional narrowing prior to their August 7, 2020 deadline for filing IPRs.

The Honorable Maryellen Noreika
June 9, 2020
Page 3

decisions and prepare petitions. It would be unfair to require Plaintiffs to make further narrowing now *with no additional information* (such as the Court's claim construction or expert discovery), particularly when the purported justification relates to hypothetical proceedings in another forum. And having waited to such a late date to file such IPR petitions, any institution decisions would come well into expert discovery.[2]

Plaintiffs respectfully request that the Court enter its proposal as it allows for the orderly reduction in both parties' cases to prepare this case for trial and is in keeping with the Court's ruling on January 13 and its request on May 11.

**Defendants' Position:**

- By **July 1, 2020**, Plaintiffs shall provide revised infringement contentions to include no more than 8 Patents and 40 claims.
- By **September 1, 2020**, Defendants shall provide revised invalidity contentions to include no more than 80 asserted references and 240 prior art arguments
- By **Close of Fact Discovery**, Plaintiffs shall provide final infringement contentions to include no more than 6 patents and 20 claims.
- By **60 days** after Plaintiffs serve revised infringement contentions, Defendants shall provide final invalidity contentions to include no more than 40 references and 120 arguments.
- By **April 14, 2021**, Plaintiffs shall narrow to no more than 4 patents and 15 claims.
- By **April 27, 2021**, Defendants shall narrow to no more than 15 references and 45 arguments.

In its May 11, 2020 Minute Order, the Court directed that "[t]he parties shall also propose a schedule for further narrowing of the issues in this case." (Minute Order entered on May 11, 2020). At this juncture, Plaintiffs still assert 50 claims from 11 patents, even though 40 of those claims are from the same six core patents. Plaintiffs know, however, that these patents and claims will be substantially reduced before trial: even Plaintiffs' narrowing proposal anticipates a trial on no more than six patents and 15 claims. If the trial will not involve 11 patents or 50 claims, there is no reason for the Court and the parties to expend the tremendous resources required to litigate a case of that scope through claim construction and discovery. Plaintiffs have not proffered a sound reason to do so, even across multiple meet-and-confer telephone conferences on this issue.

There is another factor that counsels in favor of narrowing the case now. A driving force behind this narrowing dispute is Defendants' deadline to file petitions for *inter partes* review with the PTAB on August 7, 2020. Plaintiffs' position is transparently designed to frustrate Defendants' ability to efficiently file those IPR petitions. Notably, Plaintiffs confirmed, during the meet-and-confer process for this submission, that they are unwilling to agree to *any* case

---

[2] To the extent that Plaintiffs have dropped patents, this was part of the court-ordered narrowing (an idea originated by Defendants) not because the infringement case of some patents lacked merit.

narrowing proposal that would further reduce the number of patents or claims asserted before the August 7 deadline. Plaintiffs are well aware that the cost and effort of filing 11 IPRs would be immense. Indeed, the filing fees alone for 11 IPRs would total more than $335,500. Plaintiffs' suggestion that Defendants have somehow delayed in filing IPR petitions is not accurate. Defendants are well within the statutory deadline to file those petitions and Defendants do not know which additional patents Plaintiffs will choose to drop before trial. Plaintiffs' argument only underscores the benefits of Defendants' narrowing proposal. Plaintiffs have already chosen to abandon their claims with respect to six of the seventeen patents listed in the Complaint. Plaintiffs' decision would have rendered IPR petitions against those six patents moot with respect to Plaintiffs' infringement claims in this case. Defendants' narrowing proposal is aimed at avoiding that result with the additional patents Plaintiffs will inevitably abandon before trial.

Plaintiffs have all the information they need to make an informed assessment as to which patents and claims to assert. Defendants have provided their core technical documents, including all source code in Defendants' possession, custody or control; Defendants have provided detailed invalidity contentions totaling more than 3,600 pages; and Defendants have provided the Plaintiffs their positions with respect to the 15 claim terms the parties submitted to the Court for construction. And Plaintiffs all but admit the asserted claims significantly overlap. With respect to infringement, "Plaintiffs contend that each of the known Accused Products literally infringes each Asserted Claim of each Asserted Patent." Plaintiffs' Infringement Contentions, at 29. The same is true for damages: Plaintiffs' damage contentions make no distinction whatsoever between the alleged actual damages for each of the eleven presently-asserted patents. Plaintiffs have not identified any "*additional information*" they need before further narrowing the case.

Despite the Court's May 11 order, Plaintiffs' proposal does not provide for any meaningful *further* narrowing of this case. Instead, it largely mirrors the deadlines already in the Scheduling Order. Plaintiffs' characterization of their deadline to serve initial infringement contentions as a previous "narrowing" event is not accurate. Those initial infringement contentions were the first time Plaintiffs were required to produce contentions of any kind in this case, not a narrowing of previous contentions they had articulated. Defendants submit that their proposal provides for the type of material case narrowing the Court sought with its order and promotes the conservation of resources for both parties and the Court. Defendants respectfully request the Court adopt their proposal.

Respectfully,

*/s/ Andrew C. Mayo*

Andrew C. Mayo (#5207)

ACM/nlm

cc:   All Counsel of Record (via electronic mail)