# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MQ GAMING, LLC, and CREATIVE KINGDOMS TECHNOLOGIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LEGO SYSTEMS, INC., LEGO BRAND RETAIL, INC., WARNER BROS. HOME ENTERTAINMENT INC., WARNER BROS. INTERACTIVE ENTERTAINMENT INC., and WB GAMES INC., <br><br> Defendants. | C.A. No. 1:19-cv-00905-MN |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY PENDING *INTER PARTES* REVIEW

Dated: February 18, 2021

**OF COUNSEL:**
Anthony J. Fitzpatrick (admitted *pro hac vice*)
ajfitzpatrick@duanemorris.com
Gregory S. Bombard (*admitted pro hac vice*)
gbombard@duanemorris.com
Bryan Harrison (admitted *pro hac vice*)
BHarrison@duanemorris.com
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: (857) 488-4200

Patrick D. McPherson (admitted *pro hac vice*)
pdmcpherson@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street, Suite 1000
Washington, D.C. 20004-2166
Telephone: (202) 776 5214

**DUANE MORRIS LLP**

Richard L. Renck (#3893)
rlrenck@duanemorris.com
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901

*Counsel for Defendants LEGO Systems, Inc., LEGO Brand Retail, Inc., Warner Bros. Home Entertainment Inc., Warner Bros. Interactive Entertainment Inc., and WB Games Inc.*

Joseph A. Powers (admitted *pro hac vice*)
JAPowers@duanemorris.com
Daniel Tarr (admitted *pro hac vice*)
dtarr@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone:  (215) 671-0158

Robin McGrath (admitted *pro hac vice*)
rlmcgrath@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: (404)253-6900

Jordana A. Garellek (admitted *pro hac vice*)
JGarellek@duanemorris.com
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 471-1829

Nicole E. Grigg (admitted *pro hac vice*)
NEGrigg@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 847- 4176

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

        A.     Plaintiffs' Claims and the Procedural Posture of the Litigation ............................ 2

        B.     Defendants' Attempts to Avoid Motion Practice Regarding the Stay ................... 5

III.    LEGAL STANDARD ...........................................................................................5

IV.     ARGUMENT ........................................................................................................6

        A.     Granting A Stay Will Simplify the Issues For Trial ................................................ 6

               1.     The PTAB Will Consider Validity Challenges to 32 of the 40 Presently-Asserted Claims Through the Petitions ....................................................... 7

               2.     If the PTAB Invalidates the 32 Instituted Claims, Then Defendants Will Likely Seek Summary Judgment on the 8 Remaining Claims. ................. 9

        B.     A Stay Permits the Court and the Parties to Avoid Significant Expert Discovery, *Daubert* Motions, and a Jury Trial. ................................................... 10

        C.     Plaintiffs Will Suffer No Meaningful Prejudice From a Stay. ............................. 12

V.      CONCLUSION ..................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*454 Life Scis. Corp.*, 2016 U.S. Dist. LEXIS 153978, at *12 ..........................................................13

*AIP*, 2014 WL 12642000, at *3 ........................................................................................................13

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-1107, 2014
    U.S. Dist. LEXIS 47430 (D. Del. Apr. 7, 2014)............................................................6, 8, 13

*British Telecomms. PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB,
    2019 U.S. Dist. LEXIS 166651 (D. Del. Sep. 27, 2019) ...........................................5-6, 10, 12

*Contour IP Holding, LLC v. Gopro, Inc.*, Civil Action No. 15-1108-LPS-CJB,
    2016 U.S. Dist. LEXIS 95627 (D. Del. July 14, 2016) .......................................................7, 13

*Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762 (E.D. Pa. 2014) ....................11

*DivX, LLC v. Netflix, Inc.*, No. CV191602PSGDFMX, 2020 WL 3026034 (C.D.
    Cal. May 11, 2020) .............................................................................................................14

*Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 U.S. Dist. LEXIS
    45452 (D. Del. Mar. 20, 2019)......................................................................................7, 11-12

*Ever Win Int'l Corp. v. Radio Shack Corp.*, 902 F. Supp. 2d 503 (D. Del. 2012)........................14

*IOENGINE, LLC v. PayPal Holdings, Inc.*, Civil Action No. 18-452-WCB, 2019
    U.S. Dist. LEXIS 141545, at *15 (D. Del. Aug. 21, 2019) ..............................................11-12

*Longitude Licensing Ltd. v. Apple Inc.*, No. 14-cv-04275-EDL, 2015 U.S. Dist.
    LEXIS 191521 (N.D. Cal. Oct. 29, 2015) ..............................................................................11

*Neste Oil OYJ*, 2013 U.S. Dist. LEXIS at *15....................................................................... 8, 13-14

*Nexans, Inc. v. Belden, Inc.*, No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS
    20116 (D. Del. Feb. 19, 2014) ................................................................................................8

*NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 U.S. Dist. LEXIS
    29573, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ...................................................5-7, 11

*Pegasus Dev. Corp. v. DIRECTV, Inc.*, No. 00-1020, 2003 WL 21105073 (D. Del.
    May 14, 2003)........................................................................................................................8

*Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, Civil Action No. 12-
    1461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555 (D. Del. Jan. 15, 2014) .......................6, 12-13

*Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12-1461-LPS-CJB, 2015 U.S. Dist. LEXIS 4234 (D. Del. Jan. 14, 2015) ....................................8

*Sirona Dental Sys. GmbH v. Dental Wings Inc.*, C.A. No. 14-460-LPS-CJB D.I. 67, 2016 U.S. Dist. LEXIS 155706 (D. Del. March 30, 2016)................................................13

*Smartflash LLC v. Apple Inc.*, 621 F. App'x 995 (Fed. Cir. 2015)................................................11

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706, 2019 U.S. Dist. LEXIS 44056, 2019 WL 1244948 (D. Del. Mar. 18, 2019) ....................................................12

*Tas Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12cv2777-GPC(BGS), 2014 U.S. Dist. LEXIS 26107 (S.D. Cal. Feb. 26, 2014) ................................................11

*Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368 (Fed. Cir. 2014) .......................8

*Williamson v. Google Inc.*, No. 15-966, 2015 WL 10890658 (N.D. Cal. Oct. 8, 2015) ........................................................................................................................................7

## Other Authorities

H. Rep. No. 112-98, Part I (2011)................................................................................................5

https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/25/proclamation-on-the-suspension-of-entry-as-immigrants-and-non-immigrants-of-certain-additional-persons-who-pose-a-risk-of-transmitting-coronavirus-disease/ ............................................................................10

U.S. Patent No. 6,234,902................................................................................................................9

U.S. Patent No. 8,475,275............................................................................................................2-4

U.S. Patent No. 8,790,180...............................................................................................2-4, 7, 9-10

U.S. Patent No. 8,814,688............................................................................................................2-4

U.S. Patent No. 9,039,533............................................................................................................2, 4, 9

U.S. Patent No. 9,162,149............................................................................................................2-4

U.S. Patent No. 9,393,500........................................................................................................2, 4-5, 9

U.S. Patent No. 9,463,380............................................................................................................2-4

U.S. Patent No. 9,770,652........................................................................................................2-4, 9

## I.      <u>INTRODUCTION</u>

On February 16 and 17, 2021, the PTAB instituted five *inter partes* review proceedings that cover five of the eight asserted patents and 32 of the 40 presently-asserted patent claims in this case. The IPRs will greatly simplify the issues to be addressed by this Court, will likely assist the Court in determining patent validity and non-infringement, and may eliminate the need for trial. Defendants therefore request the Court stay all further proceedings in this case pending the outcome of those IPRs.

Under Plaintiffs' adopted proposal for this case, Plaintiffs intend to try 15 claims from up to 6 patents. Thus, under the current schedule, there will necessarily be overlap between the claims and patents selected for trial and the claims and patents subject to IPRs. Indeed, as shown herein, ***all*** of the asserted claims in all eight of the currently-asserted patents are simply different variations and combinations of the same claim elements. Thus, the eight asserted claims from the three patents that are not covered by instituted IPRs will unquestionably be impacted by any invalidity decision of the PTAB, as such claims are not patentably distinct from those being addressed in the IPR proceedings. Simply put, the outcome of the IPRs will have a substantial impact on the invalidity and infringement issues in this case, and may well eliminate the need for any trial.

A stay will neither prejudice Plaintiffs nor create any tactical advantage for any party. Indeed, Plaintiffs will have a full and fair opportunity to defend the patentability of the 32 claims under review in the IPR proceedings. Additionally, a stay will not meaningfully delay resolution of this case. The PTAB will issue its final written decision for all of the IPR proceedings by February 17, 2022. Neither Plaintiff practices any of the patents-in-suit, and Defendants are no longer selling the accused products in this case. A delay in the trial date will not subject Plaintiffs

to any risk of ongoing or increased alleged injury. For these reasons and those set forth in greater detail below, the Court should enter a stay of this case pending resolution of the IPR petitions.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Claims and the Procedural Posture of the Litigation

Plaintiffs filed the present suit on May 14, 2019, nearly three years after sending their first demand letter regarding this dispute. In their Complaint, Plaintiffs alleged that Defendants infringed up to 514 claims in 17 patents through their manufacture, import, use, offer for sale, and sale of "LEGO® Dimensions" products. (D.I. 1). Plaintiffs waited until August 7, 2019, three months after filing, to serve the Complaint. (D.I. 5-9.) Presently, Plaintiffs are asserting 40 claims from eight patents – U.S. Patent No. 9,162,149 ("the '149 patent"), U.S. Patent No. 9,463,380 ("the '380 patent"), U.S. Patent No. 9,770,652 ("the '652 patent"), U.S. Patent No. 8,790,180 ("the '180 patent"), U.S. Patent No. 8,475,275 ("the '275 patent"), U.S. Patent No. 8,814,688 ("the '688 patent"), U.S. Patent No. 9,039,533 ("the '533 patent")  and U.S. Patent No. 9,393,500 ("the '500 patent") (hereafter, the "Asserted Patents").[1]  The 40 asserted claims are all directed to the same general subject matter and are simply different variations of verbiage and combinations of the same elements.

All four of the shared specifications of the Asserted Patents disclose a "fully immersive" role-playing game in which participants have the opportunity to "carry out and immerse themselves in a realistic fantasy experience of practicing, performing, and mastering 'real'

---

[1]  Plaintiffs are currently asserting claims 1, 2, 5, 6, 8, 9,11, 13-15 of the '149 patent, claims 1, 6, and 7 of the '380 patent, claims 1, 5-10, 12, 14, 15, 19 of the '652 patent, claims 1, 16, 19, 33, 41 of the '180 patent, claims 1, 2, 6 and 38 of the '275 patent, claims 47, 49, 50, and 51 of the '688 patent, claim 3 of the '533 patent and claims 1 and 8 of the '500 patent (collectively, "the Asserted Claims"). Per order of this Court, Plaintiffs are required to further narrow the number of asserted claims and patents to 15 claims across a maximum of 6 patents before trial.

magic." '275 Patent, 1:66-2:2. The specifications all describe an RFID-enabled "magic wand" that game participants manipulate to "electronically and 'magically' interact with their surrounding play environment by pointing or using their wands in a particular manner to achieve desired goals or produce desired effects within the play environment." '275 Patent, 9:47-51. The Asserted Claims, however, are not directed towards use of a magic wand. Rather, with few variations, they are directed to various functionality enabled by simply placing an RFID chip into a toy. Plaintiffs allege that the LEGO® Dimensions product, which uses RFID technology, infringes the Asserted Claims.

Plaintiffs did not invent "smart" toys, as the concept of using wireless, inductively-coupled technology in toys has been known for at least forty years. Plaintiffs also did not invent the video game category known as "toys to life," as storing game data in a toy that wirelessly communicates with and appears in a video game has likewise been known since the 1990s.  Nor did Plaintiffs invent using an RFID chip in a toy, as that concept has been known since at least 1998. Indeed, as demonstrated in Defendants' IPR petitions, now instituted by the PTAB, art published in the 1990s (and before the earliest claimed priority date of the Asserted Patents) teaches or predicts the claim limitations of the Asserted Claims.

On August 7, 2020, Defendants filed six petitions for *inter partes* review of the '149 patent (IPR2020-01443), '380 patent (IPR2020-01444), '652 patent (IPR2020-01445), '180 patent (IPR2020-01446), '275 patent (IPR2020-01447), and '688 patent (IPR2020-01448) (collectively, "the Challenged Patents"). The IPRs requested review of 40 out of the 50 then-asserted claims of the Challenged Patents: claims 1, 2, 5, 6, 8, 9,11, 13-16 of the '149 patent, claims 1, 2, 6, and 7 of the '380 patent, claims 1, 5-10, 12, 14, 15, 19 of the '652 patent, claims 1, 16, 19, 22, 33, 41 of the '180 patent, claims 1, 2, 6 and 38 of the '275 patent, and claims 47,

49, 50, and 51 of the '688 patent (collectively, "the Challenged Claims"). These forty Challenged

Claims include 37 of the currently asserted 40 claims in this litigation.

Defendants selected the Challenged Claims in particular because they include ***all*** the

claim elements appearing in each of the claims asserted in this case, including the claims in the

'533 and '500 Patents that were not the subject of an IPR petition. The Appendix attached to this

brief maps the claim elements contained in the Challenged Claims to those of the Unchallenged

Claims.

On February 16 and 17, 2021, the PTAB instituted trials on all asserted grounds and for

all Challenged Claims in the Petitions for the '149 patent, the '380 patent, the '652 patent, the

'275 patent, and the '688 patent. (Exs. 1-6 to Bombard Declaration). In instituting those

Petitions, the PTAB found that Defendants have demonstrated a reasonable likelihood that

Defendants will succeed in their challenges to the patentability of the 32 instituted claims. (*Id.*).

The PTAB denied institution of the petition for the '180 Patent. Yet, as shown in the Appendix,

with two of the asserted claims of the '180 Patent, (claims 33 and 41), the PTAB separately

found that each element of those claims was in the combination of art used in the Petitions for

the 32 Instituted Claims. For the other three claims (claims 1, 16, and 19), the PTAB's decision

not to institute demonstrates that Plaintiffs' infringement theory for those claims is not viable.

As a result of the institution decisions, the IPRs will address 32 of the 40 Asserted Claims

in this action (the "Instituted Claims"), leaving only 8 claims that will not be directly addressed

by these IPRs – the five asserted claims of the '180 Patent for which the PTAB denied

institution, dependent claim 3 of the '533 patent, and claims 1 and 8 of the '500 patent which

were not challenged in the IPRs (the "Unchallenged Claims").  Yet, given the similarities

between the Instituted Claims and the 8 claims that are not addressed by the IPRs, the PTAB's

IPR decisions may have the practical effect of being dispositive as to all claims currently asserted.

Expert discovery in this Court is only just about to start, with opening expert reports due to be served on February 26, 2021. (D.I. 143) The parties are scheduled to exchange two additional rounds of expert disclosures in March and April of 2021, with the close of expert discovery occurring on May 3, 2021. (*Id.*) The pretrial conference is currently scheduled for September 2, 2021, with a five-day jury trial scheduled to start on September 13, 2021.

**B.**     **Defendants' Attempts to Avoid Motion Practice Regarding the Stay**

On February 17, 2020, counsel for Defendants engaged in a telephonic meet and confer with counsel for Plaintiffs and asked whether Plaintiffs would stipulate to a stay of this litigation pending the IPRs. Plaintiffs said they would oppose any effort to stay the litigation pending the IPRs.

**III.     LEGAL STANDARD**

"Congress intended for district courts to be liberal in granting stays pending" the outcome of IPRs. *British Telecomms. PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB, 2019 U.S. Dist. LEXIS 166651, at *7 (D. Del. Sep. 27, 2019). The reason for this liberal approach is that Congress intended IPR proceedings to be "quick and cost effective alternatives to litigation." H. Rep. No. 112-98, Part I, at 48 (2011) (emphasis added). "A stay is particularly justified when 'the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues.'" *British Telecomms. PLC v. IAC/InterActiveCorp*, 2019 U.S. Dist. LEXIS 166651, at *4-5 (quoting *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 U.S. Dist. LEXIS 29573, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015)). Therefore, "'after the PTAB has instituted review proceedings, the parallel district court

5

litigation ordinarily should be stayed.'" *Id.* at *9 (quoting *NFC Tech. LLC*, 2015 WL 1069111, at *7).

In determining whether to grant a stay, the Court should consider: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, Civil Action No. 12-1461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555, at *6 (D. Del. Jan. 15, 2014). In this case, all three factors favor a stay pending resolution of the IPR proceedings.

## IV.   ARGUMENT

### A.   Granting A Stay Will Simplify the Issues For Trial

Courts in this District have recognized that there "are many important ways in which granting a stay pending [IPR] can simplify the issues in a litigation." *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-1107, 2014 U.S. Dist. LEXIS 47430, at *4-5 (D. Del. Apr. 7, 2014). Examples of how litigation can be simplified include: "the outcome of the reexamination may encourage a settlement without further involvement of the court," "the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation," "defenses, and evidence will be more easily limited in pre-trial conferences," and "the cost will likely be reduced both for the parties and the court." *Id.*

Staying this proceeding until the conclusion of the instituted IPRs will simplify the issues in this case.  In fact, if successful, the IPRs could even eliminate the need for a trial in its entirety, either due to settlement or the effect of the IPR decisions on the eight claims not addressed in the IPRs (the "Remaining Claims"). Indeed, the PTAB's decision to institute five Petitions strongly suggests that "there is a substantial likelihood of simplification of the district

court litigation." *NFC Tech. LLC v. HTC Am., Inc.,* No. 2:13-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015).  If the IPRs are successful, then the overwhelming majority of the claims in this case – 32 of 40 – will no longer be at issue. Even in the event that a subset of the claims survive IPRs or in the unlikely event that all 32 Instituted Claims survive the IPRs, the PTAB's decision will provide guidance to both sides that could affect both the invalidity and infringement arguments asserted at trial. Indeed, the PTAB's institution denial decision relating to the '180 Patent has already provided guidance that will affect Plaintiffs' infringement claims for that patent. Specifically, the PTAB's determination that the claimed limitations "first gaming device" and "game control system" read on two separate devices eliminates Plaintiffs' infringement assertion that the LEGO Dimensions product infringes claims 1, 16, and 18 of the '180 Patent, because that assertion is based on Plaintiffs reading those limitations on the same game console device.

        1.     <u>The PTAB Will Consider Validity Challenges to 32 of the 40 Presently-Asserted Claims Through the Petitions.</u>

In granting each of the five Petitions, the PTAB noted that "the merits of the Petition appear strong."  This is a "strong factor that weighs in favor of a stay." *See Williamson v. Google Inc.,* No. 15-966, 2015 WL 10890658 at *2 (N.D. Cal. Oct. 8, 2015). The PTAB has already ruled it is "reasonably likely" that it will invalidate 32 of the 40 claims asserted in this case. Courts in this District frequently enter litigation stays where, as here, a "very high percentage" of the asserted claims are subject to IPRs. *See e.g. Contour IP Holding, LLC v. Gopro, Inc.*, Civil Action No. 15-1108-LPS-CJB, 2016 U.S. Dist. LEXIS 95627, at *6-7 (D. Del. July 14, 2016) ("GoPro has . . . demonstrated to the PTAB that there is a reasonable likelihood that it will prevail as to its arguments regarding the invalidity of those many claims."); *see also Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 U.S. Dist. LEXIS 45452, at *4 (D. Del.

Mar. 20, 2019) ("The potential for simplification of the issues in this case is quite substantial. Fourteen of the 15 asserted claims are under IPR review and it is likely that some of these claims will be modified or invalidated.").

Even when a relatively small number of asserted patents are the subject of instituted IPRs, Courts in this District commonly stay corresponding infringement litigation pending IPRs. *See e.g.*, *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-1107, 2014 U.S. Dist. LEXIS 47430, at *4-5 (D. Del. Apr. 7, 2014) (finding "the issue simplification to be had through PTO review of the claims subject to IPR petitions weighs in favor of a stay" notwithstanding that only two of six asserted patents were the subject of instituted petitions). *See also Pegasus Dev. Corp. v. DIRECTV, Inc.*, No. 00-1020, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (granting a stay where a reexamination request had been granted for only one of six asserted patents because "a stay may result in simplification or reduction of issues for the court's consideration. . . ."). Indeed, it is generally accepted that "'there can still be simplification of the issues when only some, but not all, of the claims asserted in [the] litigation are challenged' in a PTO proceeding." *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12-1461-LPS-CJB, 2015 U.S. Dist. LEXIS 4234, at *8 (D. Del. Jan. 14, 2015) ("*Princeton II*") (quoting *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1372 (Fed. Cir. 2014)); *Nexans, Inc. v. Belden, Inc.,* No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116, at *11 (D. Del. Feb. 19, 2014) ("[A] complete overlap of the issues in the litigation and the IPR is not required to establish simplification of the case."); *Neste Oil OYJ,* 2013 U.S. Dist. LEXIS at *15 ("the `issue simplification' factor does not require complete overlap.")

Here, the PTAB will be reviewing the vast majority of the Asserted Claims – 32 of 40 claims. Given the similarities between and among the 32 Instituted Claims, it is likely that all 32

8

will rise or fall together, because Defendants' arguments and prior art references apply across all 32 Instituted Claims. Indeed, the PTAB found that UK Patent Application GB 2,334,456 ("Stamper") will likely invalidates all 32 Instituted Claims, either alone or in combination with other references, including U.S. Patent No. 6,234,902 ("Hazama"), a prior art reference used in obviousness combinations in all five instituted Petitions. Therefore, if Defendants are successful, it is likely that all 32 of the Instituted Claims will be invalidated.

2.    If the PTAB Invalidates the 32 Instituted Claims, Then Defendants Will Likely Seek Summary Judgment on the 8 Remaining Claims.

If Defendants are successful in their Petitions, they will likely seek leave to file summary judgment, either for non-infringement or invalidity, on the Remaining Claims in light of the PTAB's decision. The prior art used in the IPRs likewise qualifies as prior art against the '500 and '533 Patents, so if the PTAB invalidates the Instituted Claims, then the three Unchallenged Claims would also be invalid over the same art for the same reasons. As shown in the attached Appendix, every limitation of asserted claims 1 and 8 of the '500 Patent and claim 3 of the '533 Patent (the three Unchallenged Claims) also appears in at least one of the 32 Instituted Claims. *Compare* '500 Patent, claim 1 to '652 Patent, claim 15; *compare* '500 patent claim 8 to '652 Patent, claim 9; *compare* '533 Patent claim 3 to '652 Patent, claim 9. Other examples showing the similarities between the limitations of Claims 33 and 41 of the '180 Patent and Claims 7 and 8 of the '652 Patent, respectively, are set forth in the attached Appendix.

Additionally, the eight asserted claims of the '180 Patent will also likely be subject to Defendants' request to file summary judgment after the PTAB issues its final written decisions on the Petitions. The institution denial decision on the '180 Patent IPR provides strong additional evidence rebutting Plaintiffs' infringement position with respect to claims 1, 16, or 18 of the '180 Patent. The PTAB's ruling shows that Plaintiffs' infringement read is not supported by the

9

claim language because it relies on a gaming console to satisfy both the "first gaming device" and "gaming control system" claim limitations.

The likely dispositive effect of the PTAB's decisions on the Petitions on the eight Remaining Claims weighs strongly in favor of staying this case. For example, in *British Telecomms*, Circuit Judge Bryson granted a stay where "[i]t appear[ed] likely that any decision of the PTAB with regard to the validity of [the challenged claims would] have a significant impact on the issue of the validity of [the other] claims." 2019 U.S. Dist. LEXIS 166651, at *24. Specifically, Judge Bryson found "the remaining two claims are likely to be affected by the outcome of the IPR proceedings." *Id.* Here, not only would the eight Remaining Claims be "affected by the outcome of" the instituted Petitions, they may in fact be disposed of entirely by the PTAB's decisions.

Thus, notwithstanding the eight total Remaining Claims, the PTAB's decision with respect to the 32 Instituted Claims will likely "have a significant impact on the issue of the validity" of the three Unchallenged claims and will impact the validity and infringement issues relating to the '180 Patent.

> B.   **A Stay Permits the Court and the Parties to Avoid Significant Expert Discovery, *Daubert* Motions, and a Jury Trial.**

The status of this litigation weighs in favor of a stay in this case. Before the PTAB issues its Final Written Decisions in February 2022, the Parties must serve three rounds of expert disclosures, conduct at least six expert depositions, brief and argue any *Daubert* motions, possibly brief and argue motions for summary judgment, prepare the Pre-Trial Order and conduct a five-day jury trial.[2]   Therefore, "the bulk of the expenses that the parties would incur

---

[2] The jury trial will involve international witnesses from at least England and Denmark who, at present, are indefinitely restricted from entering the United States as a result of the ongoing COVID-19 pandemic. See https://www.whitehouse.gov/briefing-room/presidential-

in pretrial work and trial preparation are still in the future.'" *IOENGINE, LLC v. PayPal Holdings, Inc.*, Civil Action No. 18-452-WCB, 2019 U.S. Dist. LEXIS 141545, at *15 (D. Del. Aug. 21, 2019) (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, at *3 (E.D. Tex. Mar. 11, 2015)); *see also Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005-06 (Fed. Cir. 2015) (finding that the district court abused its discretion in denying a stay prior to trial, because "despite the substantial time and effort already spent in this case, the most burdensome task is yet to come."); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770-71 (E.D. Pa. 2014) (considering whether expert discovery is complete and whether dispositive motions have been filed in finding that the stage of the case weighed in favor of a stay); *Tas Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12cv2777-GPC(BGS), 2014 U.S. Dist. LEXIS 26107, at *10-11 (S.D. Cal. Feb. 26, 2014) ("[S]ignificant amount of work still remains such as expert discovery, summary judgment motions and trial. Therefore, the Court concludes that at this stage of the litigation, a stay would not be improper."); *Longitude Licensing Ltd. v. Apple Inc.*, No. 14-cv-04275-EDL, 2015 U.S. Dist. LEXIS 191521, at *11-12 (N.D. Cal. Oct. 29, 2015) (finding that this factor weighed in favor of a stay and stating "although the parties' litigation progress to date is not insignificant, there remains much more work to be done and the Court considers the case to be in a relatively early stage.").

On this point, the decision in *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 U.S. Dist. LEXIS 45452 (D. Del. Mar. 20, 2019) is instructive. There, Judge Stark entered a stay pending IPRs even though the Court had "already issued its claim construction order, fact discovery is complete, and expert discovery is nearly concluded." Judge Stark reasoned that the

---

actions/2021/01/25/proclamation-on-the-suspension-of-entry-as-immigrants-and-non-immigrants-of-certain-additional-persons-who-pose-a-risk-of-transmitting-coronavirus-disease/.

case was "at an efficient stopping point," and the IPRs made it likely "the issues for trial will be simplified by a stay." *Id*. at *6. This case is likewise at an "efficient stopping point" because the parties are scheduled to exchange opening expert reports on February 26, and have yet to begin work on responsive expert reports or reply reports. Staying the case now could save the parties substantial resources by not having experts address infringement and invalidity issues with currently asserted claims that may not survive IPRs.

Moreover, there is no permutation of claim selection and patent narrowing that prevents direct overlap between this litigation and the IPRs. Plaintiffs are required by the Court's narrowing order to select a maximum of fifteen patents from six claims to proceed to trial. Even if Plaintiffs agreed to abandon every claim subject to the IPRs and proceed with only the eight Remaining Claims (a proposal not made by them during the meet and confer), as demonstrated in the Appendix, the scope of those claims would still be impacted by the IPR decisions. *See British Telecomms*, 2019 U.S. Dist. LEXIS 166651, at *24. In light of the breadth of IPR institution decisions, it would be a waste of judicial and party resources to continue litigating claims that may never survive IPRs. Staying this proceeding now will provide the greatest possible efficiency from the PTAB's decisions on the Petitions.

**C.    Plaintiffs Will Suffer No Meaningful Prejudice From a Stay.**

Plaintiffs cannot legitimately claim any prejudice from a stay. The Parties are not competitors, and Plaintiffs admit that they do not practice the purported invention of the Asserted Patents. *See* Pl. Response to Interrogatory No. 3. "Non-practicing entities . . . 'do[] not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay.'" *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, at *21 (quoting *Princeton Dig. Image Corp.*, 2014 U.S. Dist. LEXIS 61555, 2014 WL 3819458, at *6); *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706, 2019 U.S. Dist. LEXIS 44056, 2019

WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent

Autel does not practice will not greatly harm Autel."); *Bonutti*, 2014 U.S. Dist. LEXIS 47430, at

*16 ("The relationship between the parties is no impediment to a stay . . . where the plaintiff is a

non-practicing entity.").  Moreover, Defendants no longer manufacture or sell the Accused

Products. Defendants announced the discontinuation of the Accused Products in October 2017.

This case is only about alleged past damages, and thus pushing back the jury trial for a few

months will not prejudice Plaintiffs. *Princeton Dig. Image Corp.*, 2014 U.S. Dist. LEXIS 61555,

at *21 ("Plaintiff's damages, if any, are purely monetary and can be accommodated by the award

of interest if it ultimately prevails.").

On the same day the PTAB instituted the final two petitions, Defendants initiated a meet

and confer with Plaintiffs with respect to this stay. After reaching impasse, Defendants file this

motion only one day after the final IPRs were instituted. Thus, Defendants file this motion at

"the ideal time at which to file such a request." *454 Life Scis. Corp.*, 2016 U.S. Dist. LEXIS

153978, at *12 (citing *Sirona Dental Sys. GmbH v. Dental Wings Inc.*, C.A. No. 14-460-LPS-

CJB D.I. 67, 2016 U.S. Dist. LEXIS 155706 at *26 (D. Del. March 30, 2016)); *Neste*, 2013 U.S.

Dist. LEXIS 92416, at *5-6; *see also Contour IP Holding*, 2016 U.S. Dist. LEXIS 95627, at *11

(noting request for stay came "at an understandable time" in the litigation); *AIP*, 2014 WL

12642000, at *3 ("The timing of the *inter partes* review petitions and motion to stay does not

suggest the defendants sought an unfair tactical advantage."); *Princeton Dig. Image Corp.*, 2014

U.S. Dist. LEXIS 61555, at *19 ("[T]he Court does not find the timing of the requests to suggest

an attempt to gain an inappropriate tactical advantage, and finds that this subfactor weighs in

favor of a stay").

One other factor that potentially influences the stay analysis is the possibility of the September trial date could be moved because of the COVID-19 pandemic. The Court's February 5, 2021 Standing Order Re Criminal and Civil Jury Trial Suspension cancelled all jury trials until at least April 5, 2021. While no one can predict the course of the COVID-19 pandemic with certainty, there is at least a possibility that the scheduled jury trial in this case will not be able to proceed as scheduled as a result of health and safety measures. *See DivX, LLC v. Netflix, Inc.*, No. CV191602PSGDFMX, 2020 WL 3026034, at *3 (C.D. Cal. May 11, 2020) (holding that "the coronavirus pandemic is also a relevant consideration" in granting a stay pending IPR proceedings because of trial-scheduling uncertainty). And, even if the Courts are fully open by September, the Court may well need to adjust its docket to accommodate the backlog of cases currently on hold because of the pandemic. Granting a stay pending the outcome of the IPRs allows the trial date (if a trial is necessary) to be rescheduled to some time after February 17, 2022, with the hope that the COVID-19 pandemic is in the rear view mirror and no longer impacting scheduling.

Finally, Plaintiffs' actions to date have indicated that there is no urgency in prosecuting this action. The Accused Products were announced in April 2015, and went on sale to consumers on September 27, 2015. It was not until July 19, 2016 that Plaintiffs sent their first letter accusing the LEGO Dimensions product of infringement. Plaintiffs then waited almost three years before filing the Complaint on May 14, 2019.  Plaintiffs then waited almost three months to serve Defendants with process until August 7, 2019. Upon filing the Complaint, Plaintiffs did not seek preliminary injunctive relief. *See Neste*, 2013 U.S. Dist. LEXIS 92416, at *11 (determining that this factor weighed in favor of a stay in part because the plaintiff "failed to seek a preliminary injunction against any of the defendants"); *Ever Win  Int'l Corp. v. Radio Shack Corp.*, 902 F.

Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."). Plaintiffs' own actions demonstrate a lack of urgency in resolving this matter.

## V.    **CONCLUSION**

For all of the foregoing reasons, this Court should stay this litigation pending the resolution of the IPRs.

Dated: February 18, 2021                              Respectfully submitted,

**OF COUNSEL:**                                       **DUANE MORRIS LLP**
Anthony J. Fitzpatrick (admitted *pro hac vice*)
ajfitzpatrick@duanemorris.com                         */s/ Richard L. Renck*
Gregory S. Bombard (*admitted pro hac vice*)          Richard L. Renck (#3893)
gbombard@duanemorris.com                              rlrenck@duanemorris.com
Bryan Harrison (admitted *pro hac vice*)              **DUANE MORRIS LLP**
BHarrison@duanemorris.com                             222 Delaware Avenue, Suite 1600
**DUANE MORRIS LLP**                                  Wilmington, DE 19801
100 High Street, Suite 2400                           Telephone:  (302) 657-4900
Boston, MA 02110-1724                                 Facsimile: (302) 657-4901
Telephone:  (857) 488-4200

Patrick D. McPherson (admitted *pro hac vice*)        *Counsel for Defendants LEGO Systems,*
pdmcpherson@duanemorris.com                           *Inc., LEGO Brand Retail, Inc., Warner*
**DUANE MORRIS LLP**                                  *Bros. Home Entertainment Inc.,*
505 9th Street, Suite 1000                            *Warner Bros. Interactive Entertainment*
Washington, D.C. 20004-2166                           *Inc., and WB Games Inc.*
Telephone:  (202) 776 5214

Joseph A. Powers (admitted *pro hac vice*)
JAPowers@duanemorris.com
Daniel Tarr (admitted *pro hac vice*)
dtarr@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone:  (215) 671-0158

Robin McGrath (admitted *pro hac vice*)

rlmcgrath@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: (404)253-6900

Jordana A. Garellek (admitted *pro hac vice*)
JGarellek@duanemorris.com
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 471-1829

Nicole E. Grigg (admitted *pro hac vice*)
NEGrigg@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 847- 4176